## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JUAN VAZQUEZ,** | : | **CIVIL NO. 1:CV-13-01067** |
| | : | |
| **Plaintiff** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | |
| | : | |
| **CO YEOMAN, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## M E M O R A N D U M

Plaintiff Juan Vazquez, an inmate currently incarcerated at the State Correctional Institution in Albion, Pennsylvania ("SCI-Albion"), commenced this civil rights action by filing a complaint on April 24, 2013, pursuant to the provisions of 42 U.S.C. § 1983. (Doc. 1.)  In his complaint, Plaintiff asserts both federal and state claims regarding back injuries and pain resulting from his cell assignment while he was previously incarcerated at the State Correctional Institution at Smithfield ("SCI-Smithfield") in Huntingdon, Pennsylvania.  Named as Defendants are employees from SCI-Smithfield, specifically Correctional Officer ("CO") Yeoman and Sergeant Boroski (collectively "Corrections Defendants"), and Josh Mahute, a physician's assistant ("PA").  Plaintiff seeks compensatory and declaratory relief.

Presently before the court are two motions to dismiss filed by both sets of Defendants.  (Docs. 23 & 25.)  For the reasons set forth below, PA Mahute's motion

to dismiss will be granted and he will be dismissed as a party in this action. Corrections Defendants' motion to dismiss will be granted in part and denied in part.

## I.    Background

In his complaint, Plaintiff provides the following factual background.  For purposes of disposition of the instant motions to dismiss, the factual allegations asserted in the complaint will be accepted as true and viewed in a light most favorable to Plaintiff.

Plaintiff arrived at SCI-Smithfield on August 31, 2011, and received a cell assignment on the top tier of the C-block housing unit. (Doc. 1 ¶ 8.)  On September 8, 2011, Plaintiff went to sick call with complaints of chronic back pain and trouble maintaining his balance.  (*Id*. ¶ 9.)  As a result, Plaintiff was issued a cane and received a medical restriction requiring him to be placed on the bottom tier of the housing unit.  (*Id*.)  Plaintiff also asserts that, at or around this time, SCI-Smithfield was undergoing renovations and, therefore, it was the "custom/practice" to require that handicapped inmates eat meals in the housing unit rather than the dining hall.  (*Id*. ¶ 10.)

Plaintiff alleges that Sergeant Boroski, the supervising officer on duty on C-block during this time, was aware that Plaintiff had a cane, chronic back problems, and bottom tier status, but continued to house Plaintiff on the top tier, thus making him travel up and down stairs with his cane.  (*Id*. ¶¶ 11-12.)  He also alleges that CO

2

Yeoman, also located on C-block, was aware of Plaintiff's condition but kept him on the top tier.  (*Id*. ¶ 22-23.)

"A few days" before September 15, 2011, Plaintiff fell down the stairs in C-block and felt "significant back pains."  (*Id*. ¶ 13.)  As a result, he signed up for sick call with PA Mahute.  (*Id*.)  On September 15, 2011, Plaintiff went to sick call with PA Mahute, who told Plaintiff that he would contact Sergeant Boroski and CO Yeoman to have Plaintiff's bottom tier status enforced.  (*Id*. ¶ 14.)  Upon his return to C-block, he was not moved to a bottom tier cell and, in fact, fell down the stairs again that day.  (*Id*.)  Plaintiff was taken to an outside hospital the same day.  (*Id*. ¶ 15.) Plaintiff claims that he injured his back again and now "sometimes suffers partial paralysis in shoulder and arm area with constant headaches."  (*Id*. ¶ 16.)

Plaintiff now alleges that all three Defendants knew of the risk of harm to Plaintiff by keeping him on the top tier, yet intentionally and negligently disregarded that risk.  (*Id*. ¶¶ 18-20; 24-6; 29-36.)  In addition, Plaintiff claims that Sergeant Boroski is liable for failing to supervise CO Yeoman in connection with moving Plaintiff from the top tier to bottom tier.  (*Id*. ¶ 26.)

In addition to these allegations, Plaintiff alleges that he has fully exhausted his administrative remedies with respect to his claims.  (*Id*. ¶¶ 39-40.)  Defendants do not dispute that Plaintiff has exhausted his administrative remedies.

3

## II.     **Standard of Review - Motion to Dismiss**

Among other requirements, a sound complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  "Fair notice" in the context of Rule 8(a)(2) "depends on the type of case – some complaints will require at least some factual allegations to make out a showing that the pleader is entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (quotation omitted).  "[A] situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." *Id*.  A plaintiff must provide more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to show entitlement to relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555) (recognizing that Rule 8 pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"); *accord, e.g.*, *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (stating that the court is not "compelled to accept unsupported conclusions and unwarranted inferences or a legal conclusion couched as a factual allegation.") (quotations and citations omitted).

4

A defendant may attack a complaint by a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  In deciding a motion to dismiss under Rule 12(b)(6), the court is required to accept as true all of the factual allegations in the complaint, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007), and all reasonable inferences permitted by the factual allegations, *Watson v. Abington Twp.*, 478 F.3d 144, 150 (3d Cir. 2007), and view them in the light most favorable to the plaintiff, *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007).  If the facts alleged are sufficient to "raise a right to relief above the speculative level" such that the plaintiff's claim is "plausible on its face," a complaint will survive a motion to dismiss.  *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 555, 570) (explaining a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"); *see also Phillips*, 515 F.3d at 234; *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007); *Stevenson v. Carroll*, 495 F.3d 62, 66 (3d Cir. 2007).  Further, when a complaint contains well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id*. at 664.  However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Id*. at 678 (quoting *Twombly*, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."  *Id*.

5

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit*, 998 F.2d at 1196. Additionally, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Coll. Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." (internal quotation omitted)). However, the court may not rely on other parts of the record in making its decision. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003); *Youse v.*

6

*Carlucci*, 867 F. Supp. 317, 318 (E.D. Pa. 1994).  Such a complaint "must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Finally, in the Third Circuit, a court must grant leave to amend before dismissing a civil rights complaint that is merely deficient.  *See, e.g.*, *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001); *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000).  "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility."  *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

## III.   Discussion

In order to state a viable Section 1983 claim, a plaintiff must plead two essential elements: 1) that the conduct complained of was committed by a person acting under color of state law; and 2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution and laws of the United States.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  The defendant's conduct must have a close causal connection to the plaintiff's injury in order for Section 1983 liability to attach. *Martinez v. California*, 444 U.S. 277, 285 (1980).[1]  A prerequisite for a viable civil rights claim is that the defendant directed, or knew of and acquiesced in, the deprivation of the plaintiff's constitutional rights.  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988).  On its face, Section 1983 creates no exceptions to the liability it imposes, nor does it speak of immunity for any individual who might deprive another of civil rights.  *See Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993). Nevertheless, it is well-settled that certain government officials possess immunity from Section 1983 liability.  *Id*.

In their motion to dismiss, Corrections Defendants seek dismissal of the complaint on the basis that: (1) Plaintiff's Eighth Amendment claims do not amount to

---

[1]   The Court in *Martinez* explained: "Although a § 1983 claim has been described as 'a species of tort liability,' it is perfectly clear that not every injury in which a state official has played some part is actionable under that statute."  *Martinez*, 444 U.S. at 285 (internal citations omitted).

8

deliberate indifference; (2) Corrections Defendants enjoy sovereign immunity against Plaintiff's state law negligence claims; and (3) Plaintiff's claims against Corrections Defendants in their official capacities are barred by the Eleventh Amendment. (*See* Doc. 26.)  In his motion to dismiss, Defendant PA Mahute seeks dismissal of the complaint on the basis that: (1) Plaintiff has failed to state a claim of deliberate indifference under the Eighth Amendment; and (2) Plaintiff has failed to state a claim of negligence.  For purposes of discussion, the court will first address Corrections Defendants' argument with respect to official capacity, then will discuss the arguments in both motions to dismiss relating to the federal claims and pendant state law claims together.[2]

###   A.   Official Capacity

Corrections Defendants contend that the Eleventh Amendment bars Plaintiff's claims for money damages against them in their official capacities.  The Eleventh Amendment precludes federal court jurisdiction over suits by private parties against states or their agencies unless sovereign immunity has expressly been waived.  *United States v. Mitchell*, 445 U.S. 535, 538 (1980).  By statute, the Commonwealth of Pennsylvania has specifically withheld its consent to be sued.  *See* 42 Pa. Cons. Stat. Ann. § 8521(b); *see also Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981).  The

---

[2]  For purposes of disposition of the motions to dismiss Plaintiff's complaint, the court will exercise supplemental jurisdiction over Plaintiff's pendant state law claims.

doctrine of sovereign immunity also extends to a state official in his or her official capacity because "it is not a suit against the official but rather is a suit against the official's office. As such it is no different from a suit against the State itself." *Garden State Elec. Inspection Servs. v. Levin*, 144 F. App'x 247, 151 (3d Cir. 2005) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). In *Will*, the Supreme Court held that a state and state officers acting in their official capacities are not "persons" against whom a claim for money damages under § 1983 can be asserted. *Will*, 491 U.S. at 64. However, the Eleventh Amendment does not preclude a suit against a state official acting in his or her individual or personal capacity. *Hafer v. Melo*, 502 U.S. 21, 31 (1991); *Ex parte Young*, 209 U.S. 123, 159-60 (1908); *Koslow v. Pennsylvania*, 302 F.3d 161, 168 (3d Cir. 2002).

Based on this well-settled law, Plaintiff's claims for money damages against Corrections Defendants in their official capacities will be dismissed. To the extent that Plaintiff has brought § 1983 claims against Corrections Defendants in their individual capacities, however, those claims remain viable. *See Hafer*, 502 U.S. at 31 ("We hold that state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983.").

Turning to Plaintiff's claims for declaratory relief, the court notes that the Supreme Court instructed that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity

actions for prospective relief are not treated as actions against the State.'" *Will*, 491 U.S. at 71 n.10.  However, this language only applies to 'a *state official* in his or her official capacity." *Id.* at 71 n.10 (emphasis added).  As a result, Plaintiff's § 1983 claims for injunctive relief against Corrections Defendants in their official capacities may proceed.

### B.    Deliberate Indifference Claims

In his complaint, Plaintiff alleges that Corrections Defendants violated the Eighth Amendment when they refused to move him to the bottom tier, as mandated by a medical directive relating to his back pain.  Plaintiff also alleges that Defendant PA Mahute was deliberately indifferent to Plaintiff's serious medical needs when he failed to act, despite being aware that Corrections Defendants had refused to move Plaintiff to the bottom tier.  Further, the court will address whether Defendant PA Mahute was deliberately indifferent in providing medical care to Plaintiff.[3]  The court will address these claims in turn.

---

[3]  While it is not entirely clear that Plaintiff has alleged a claim of deliberate indifference based on inadequate medical care against PA Mahute, the court will nevertheless construe the complaint in favor of Plaintiff as liberally as possible.  Further, in his brief in opposition to the motions to dismiss, Plaintiff acknowledges that he is not asserting a claim of deliberate indifference based on inadequate medical care against Corrections Defendants.  (*See* Doc. 35 at 2) ("[D]efendants have mischaracterized plaintiff's claim as an issue of 'direct-medical treatment' when in fact, [plaintiff] has clearly stated a collateral-medical issue of 'responsive-accommodation' . . . .").  Thus, the court will not discuss Corrections Defendants with respect to a claim of deliberate indifference based on inadequate medical care.

### 1.   __Bottom Tier Designation__

In the instant motions to dismiss, Corrections Defendants and Defendant PA

Mahute both argue that Plaintiff has failed to establish that they were deliberately

indifferent to his serious medical needs with respect to his bottom tier designation.

"The Constitution 'does not mandate comfortable prisons,' but neither does it permit

inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Rhodes v.*

*Chapman*, 542 U.S. 337, 349 (1981)).  The Eighth Amendment prohibition against

cruel and unusual punishment requires that prison officials provide "humane

conditions of confinement" including "adequate food, clothing, shelter and medical

care." *Farmer*, 511 U.S. at 832.

"[T]o establish an Eighth Amendment violation an inmate must allege both an

objective element - that the deprivation was sufficiently serious - and a subjective

element - that a prison official acted with a sufficiently culpable state of mind, *i.e.*,

deliberate indifference." *Nami v. Fauver*, 82 F.3d 63, 67 (3d Cir. 1996) (citing *Wilson*

*v. Seiter*, 501 U.S. 294 (1991)).  "The objective inquiry is whether the inmate was

'denied the minimal civilized measure of life's necessities.'" *Fuentes v. Wagner*, 206

F.3d 335, 345 (3d Cir. 2000) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)).

To satisfy the subjective component, an inmate must prove that a prison official

demonstrated "deliberate indifference" to a serious risk of harm to which the inmate

was exposed. *Farmer*, 511 U.S. at 836-37.  "[A] prison official cannot be found liable

12

under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837.

In the instant case, first with respect to Corrections Defendants, Plaintiff alleges that after he received the bottom tier status on September 8, 2011 due to his "chronic back problems," both Corrections Defendants were aware of his new status yet failed to move him from the upper tier to the bottom tier.  (Doc. 1 ¶¶ 9, 11, 22.)  As a result, Plaintiff continued his upper tier status, where he was required to walk up and down stairs with the assistance of a cane.  (*Id*. ¶ 12.)  Eventually Plaintiff fell on those steps in the housing unit, injuring himself a few days before September 15, 2011, and again on September 15, 2011.  (*Id*. ¶¶ 13, 14.)  He  claims that Corrections Defendants' intentional refusal to move him to the bottom tier, despite being aware of the medical directive to do so, caused this risk of serious harm and resulting further injury to his back.

In their motion to dismiss, Corrections Defendants argue that Plaintiff's allegation that they intentionally failed to follow the housing restriction imposed by the medical department is insufficient to rise to the level of deliberate indifference, and cite several cases from other districts, none of which appear to be applicable either

13

procedurally or factually.[4]   Further, they argue that, at most, Plaintiff's allegation

amounts to a negligent delay in moving him to the bottom tier.   However, these

arguments do not properly respond to Plaintiff's allegation that Corrections

Defendants *deliberately* refused to move Plaintiff to the bottom tier, despite knowing

of the medical directive to do so, other than by baldly disputing his material

allegation.   At this stage in the litigation and without the benefit of discovery, the

court cannot assume that the extent of the risk to Plaintiff posed by the top tier status

---

[4] In support of this contention, Corrections Defendants cite the following cases.  In *Felix-Torres v. Graham*, 687 F. Supp. 38, 53 (N.D.N.Y. 2009), the district court granted a motion for summary judgment in favor a medical defendant who failed to fulfill her role in ensuring that the plaintiff was assigned to a bottom bunk.  This case is inapplicable because, here, Plaintiff is alleging that Corrections Defendants, non-medical providers, intentionally refused to carry out a directive already in place.  In *Sanderson v. Green*, No. CV 310-040, 2011 WL 1226212, *4 (S.D. Ga. Feb. 18, 2011), the district court granted a motion to dismiss a complaint that alleged that the plaintiff was intentionally placed in a top bunk despite having a "lower bunk safety profile."  The court found that the defendant was entitled to qualified immunity on the finding that, *inter alia*, the defendant was not intentionally refusing to follow a prescription for medication needed to treat a known medical condition.  *Id*.  Rather, in that case, the reason behind the "safety profile" was not readily apparent. *Id*.  This case is inapplicable here, as Plaintiff has clearly alleged the reason underlying his bottom tier status.  In *Turner v. Corbett*, Civ. A. No. 11-1701, 2012 WL 930863, * 3 (E.D. Pa. Mar. 20, 2012), the district court granted a motion to dismiss where the plaintiff claimed that he was assigned an upper bunk despite having a doctor's note specifying lower bunk status, but permitted the plaintiff to amend his complaint to include allegations relating to the nature and extent of the risk posed by a top bunk assignment.  Notably, the court found nothing in the record indicating the existence, let alone veracity, of the doctor's note.  *Id*. at *1.  In *Connors v. Heywright*, No. 02 Civ. 9988(DC), 2003 WL 21087886, *3 (S.D.N.Y. May 12, 2003), the district court *sua sponte* dismissed a complaint that alleged that prison officials were negligent for, *inter alia*, failing to move the plaintiff to the bottom bunk pursuant to a medical directive.  Construing the complaint liberally, the court also found no deliberate indifference on the basis that the plaintiff did not allege any facts relating to culpability of the defendants and, rather, did allege that the defendants promptly responded to his medical complaints.  *Id*.  This case is inapplicable because, here, Plaintiff has alleged culpability.

14

was not serious.  Moreover, while the nature of Plaintiff's injuries is somewhat unclear, given his allegations that he was taken to an outside hospital after his second fall and that he had injuries to his "shoulder and arm area with constant headaches," (Doc. 1 ¶ 16), the court will allow this claim to proceed.  Corrections Defendants' motion to dismiss on this claim will, therefore, be denied.

Turning to Defendant PA Mahute, Plaintiff alleges that, when he went to sick call on September 15, 2011 and informed PA Mahute of his bottom tier status, PA Mahute told him that he would contact both Corrections Defendants to make sure that he would be moved to the bottom tier.  (Doc. 1 ¶ 14.)  However, it was later the same day that Plaintiff fell down the stairs again and had to be taken to an outside hospital. (*Id*. ¶¶ 14-15.)  Plaintiff alleges that PA Mahute failed to take "appropriate action" in order to ensure Plaintiff was moved to the bottom tier (*Id*. ¶ 32); rather, PA Mahute "merely made a phone call for plaintiff to be moved" (*Id*. ¶ 31).

In his motion to dismiss, PA Mahute argues that Plaintiff has failed to state a claim of deliberate indifference against him because Plaintiff has not alleged subjective indifference on the part of PA Mahute.  In fact, the complaint does not even assert that PA Mahute ignored Plaintiff's complaints.  To the contrary, the complaint alleges that PA Mahute supported the transfer of Plaintiff from the upper tier to the lower tier, and even placed a call advocating such.  Upon review, the court agrees with PA Mahute here.  Without a showing that PA Mahute knew of and disregarded the

15

risk to Plaintiff in being assigned to the upper tier, Plaintiff fails to state a claim of deliberate indifference. *See Farmer*, 511 U.S. at 836-37. Rather, Plaintiff's complaint alleges that, not only was PA Mahute aware of Plaintiff's medical directive on bottom tier status, but also he tried to ensure that prison officials enforced it. This is simply not a case of deliberate indifference on the part of PA Mahute. Therefore, PA Mahute's motion to dismiss will be granted as to this claim. Further, since Plaintiff has failed to state a constitutional violation here, amendment would be futile. *See Fletcher-Harlee Corp.*, 482 F.3d at 252.

### 2.   Medical Treatment by PA Mahute

In his motion to dismiss, Defendant PA Mahute argues that Plaintiff has failed to establish that he was deliberately indifferent to Plaintiff's serious medical needs with respect to addressing Plaintiff's "chronic back problems." In order to establish an Eighth Amendment claim against a defendant for inadequate medical care, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions . . . that indicate deliberate indifference to that need." *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). *See also Rouse*, 182 F.3d at 197. A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). Additionally, "if 'unnecessary and wanton infliction of pain'

results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." *Id*. (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).

The test for whether a prison official was deliberately indifferent is whether that defendant "acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 841. "The official must both be aware of the facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. Thus, a complaint that a physician "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S. at 106.

Further, an Eighth Amendment claim does not exist when an inmate is provided with medical care but disputes the adequacy of that care. *Nottingham v. Peoria*, 709 F. Supp. 542, 547 (M.D. Pa. 1988). Mere disagreement as to the proper medical treatment does not support an Eighth Amendment claim. *Monmouth Cnty. Corr. Inst'l Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987). Only flagrantly egregious acts or omissions can violate the standard. Medical negligence alone cannot result in an Eighth Amendment violation, nor can any disagreements over the professional judgment of a health care provider. *White v. Napolean*, 897 F.2d 103, 108-10 (3d Cir. 1990); s*ee also Estelle*, 429 U.S. at 105-06 (medical malpractice is insufficient basis

upon which to establish an Eighth Amendment violation); *Rouse*, 182 F.3d at 197 ("It is well-settled that claims of negligence and medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'"); *Lanzaro*, 834 F.2d at 346 (concluding that mere allegations of malpractice do not raise issues of constitutional import).    Consequently, a claim for a violation of the Eighth Amendment will not succeed unless the medical treatment received consists of "act[s] which were either intentionally injurious, callous, grossly negligent, shocking to the conscience, unconscionable, intolerable to the fundamental fairness, or barbarous." *Norris v. Frame*, 585 F.2d 1183, 1186 (3d Cir. 1978).

In the instant case, the allegations in Plaintiff's complaint clearly demonstrate that Plaintiff received medical treatment following his falls on the stairs a few days before September 15, 2011, and on September 15, 2011, itself.  After the first fall, he signed up for sick call, and was seen by PA Mahute on September 15, 2011. Following his second fall, Plaintiff alleges that he was taken to an outside hospital for treatment.  Unfortunately, despite the medical attention, Plaintiff continued to suffer from discomfort.  This is clearly a case where Plaintiff has been given medical attention but is dissatisfied with the course of treatment and subsequent results.  As stated above, an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference.  *Durmer*, 991 F.2d at 69; *Spruill*, 372 F.3d at 235. Thus, Plaintiff has failed to establish an Eighth Amendment violation with respect his

treatment by PA Mahute for his injuries resulting from his falls.  PA Mahute's motion to dismiss will be granted as to this claim.  Further, since Plaintiff's averments fall shortof stating a constitutional violation, amendment would be futile.  *See Fletcher-Harlee Corp.*, 482 F.3d at 252.

## C.   Pendant State Law Claims

As set forth above, Corrections Defendants argue that they enjoy sovereign immunity against Plaintiff's pendant state law claims.  Defendant PA Mahute argues that Plaintiff has failed to state a valid medical negligence claim because Plaintiff has not filed a certificate of merit.  The court will address the arguments separately.

### 1.   Sovereign Immunity

Under Pennsylvania's sovereign immunity statute, "the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity."  1 Pa. Cons. Stat. Ann. § 2310. Further, at 42 Pa. Cons. Stat. Ann. § 8522, the General Assembly specifically waived sovereign immunity in nine areas, including cases involving medical professional liability.[5]  However, it is well-settled that immunity is waived only for claims asserted

---

[5]  The nine exceptions to sovereign immunity pursuant to 42 Pa. Cons. Stat. Ann. § 8522(b) are:

> (1) operation of any motor vehicle in the possession or control of a Commonwealth party; (2) acts of health care employees of Commonwealth agency medical facilities or institutions; (3) care, custody, or control of personal property in the possession or control of Commonwealth parties; (4) dangerous condition of Commonwealth agency real estate and sidewalks; (5) dangerous condition of highways under the jurisdiction of Commonwealth agency created by potholes or sinkholes or other similar conditions created by natural elements; (6) care, custody, or control of animals in the possession or control of a Commonwealth party; (7) sale of liquor at Pennsylvania liquor stores; (8) acts of a member of the Pennsylvania military forces; and (9) administration, manufacture and use of toxoid or vaccine.

against health care employees, and not to individuals who are not medical professionals. *McCool v. Dep't of Corr.*, 984 A.2d 565, 570 (Pa. Cmwlth. 2009) (interpreting 42 Pa. Cons. Stat. Ann. § 8522(b)(2)).

Here, Plaintiff's state law claim that Corrections Defendants were negligent when they failed to move Plaintiff to the bottom tier due his back injury and pain is barred by Pennsylvania's sovereign immunity statute, as neither Corrections Defendant is a health care employee of the DOC, a Commonwealth agency. *See Green v. Fisher*, Civ. No. 1:12-CV-00982, 2013 WL 664677, *6 (M.D. Pa. Feb. 22, 2013) (interpreting 42 Pa. Cons. Stat. Ann. § 8522(b)(2) as applied to claim against DOC). Thus, this claim of negligence against Corrections Defendants will be dismissed on the basis of sovereign immunity.

Further, Plaintiff's state law claim that Defendant Sergeant Boroski was negligent in failing to supervise CO Yeoman also fails because none of the waivers of sovereign immunity recognized in 42 Pa. Cons. Stat. Ann. § 8522(b) are applicable to this claim. *See Wesley v. Hollis*, Civ. No. 03-3130, 2007 WL 1655483, *15-16 (E.D. Pa. June 6, 2007) (holding supervising corrections officer was entitled to sovereign immunity against claim that he negligently failed to oversee offending corrections officer). Thus, this claim of negligent failure to supervise against Sergeant Boroski will be dismissed on the basis of sovereign immunity.

21

The court also notes that Plaintiff alleges in his complaint that Sergeant Boroski committed an Eighth Amendment violation when he failed to supervise CO Yeoman. In order to hold officials liable for failure to supervise or train subordinates properly under Section 1983, the plaintiff must allege facts which demonstrate more than the mere occurrence of an isolated incident in which an individual was deprived of constitutional rights. *Oklahoma City v. Tuttle*, 471 U.S. 808, 820-21 (1985). Misconduct by guards, without evidence that defendants were on notice that these particular offenders had previously been guilty of wrongdoing or that there was a pattern or practice of misconduct in the department, does not state a claim. *McClelland v. Facteau*, 610 F.2d 693, 697-98 (10th Cir. 1979); *Wilkinson v. Ellis*, 484 F. Supp. 1072 (E.D. Pa. 1980).  Here, because Plaintiff provides no facts establishing a pattern or practice of misconduct or abuse, no Section 1983 claim has been stated. Therefore, Plaintiff's federal claim relating to failure to train will be dismissed.

## 2.   Certificate of Merit

Defendant PA Mahute moves to dismiss the pendant state law claim of professional negligence against him, arguing that Plaintiff has failed to comply with the requirements of state law in lodging this claim.  Specifically, PA Mahute claims that Plaintiff has failed to comply with Pennsylvania Rule of Civil Procedure 1042.3 ("Rule 1042.3"), by filing a valid certificate of merit with this malpractice claim.

Rule 1042.3 provides, in pertinent part,

In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either

(1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or

(2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or

(3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

* * *

(d) The court, upon good cause shown, shall extend the time for filing a certificate of merit for a period not to exceed sixty days.  A motion to extend the time for filing a certificate of merit must be filed by the thirtieth day after the filing of a notice of intention to enter judgment of non pros on a professional liability claim under Rule 1042.6(a) or on or before the expiration of the extended time where a court has granted a motion to extend the time to file a certificate of merit, whichever is greater.  The filing of a motion to extend tolls the time period within which a certificate of merit must be filed until the court rules upon the motion.

Pa. R. Civ. P. 1042.3(a), (d).  The purpose of the required certificate of merit is to

"assure that malpractice claims for which there is no expert support will be terminated

at an early stage in the proceedings." *Chamberlain v. Giampapa*, 210 F.3d 154, 160 (3d Cir. 2000).

Rule 1042.3(a) applies to both *pro se* and represented plaintiffs and constitutes a rule of substantive state law with which plaintiffs in federal court must comply. *See Iwanejko v. Cohen & Grigsby, P.C.*, 249 F. App'x 938, 944 (3d Cir. 2007) (holding that district courts must "appl[y] Rule 1042.3 as substantive state law"); *Paige v. Holtzapple*, No. 1:08-cv-0978, 2009 WL 2588849, *3 (M.D. Pa. Aug. 19, 2009) (citing *Iwanejko*, 249 F. App'x at 944); *Fernandez v. Dep't of Justice*, No. 3:07-cv-01080, slip op. at 10 (M.D. Pa. Sept. 2, 2008) (recognizing that the plaintiff's *pro se* status "is not a viable basis upon which to excuse compliance with Rule 1042.3 or the requirement of com[i]ng forth with expert medical testimony").

Failure to file a certificate of merit under Rule 1042.3(a) or a motion for an extension under Rule 1042.3(d) is fatal unless the plaintiff demonstrates that his failure to comply is justified by a "reasonable excuse." *Perez v. Griffin*, 304 F. App'x 72, 74 (3d Cir. 2008); *see also Walsh v. Consol. Design & Eng'g, Inc.*, No. Civ. A. 05-2001, 2007 WL 2844829, *5 (E.D. Pa. Sept. 28, 2007) ("Rule 1042.3 is subject to equitable considerations and a party who fails to timely file a certificate of merit may be relieved from the requirement where the defaulting party provides a reasonable explanation or legitimate excuse.").

24

In the instant case, Plaintiff has not provided the court with a certificate of merit required by Rule 1042.3.  As a result, any malpractice claim against Defendant PA Mahute will be dismissed.

### D.   Amended Complaint

At the same time Plaintiff filed his brief in opposition to the instant motions to dismiss, (Doc. 35), Plaintiff also filed a "proposed amended complaint," (Doc. 34), notably without an attached motion for leave to file an amended complaint.  Because Plaintiff's proposed amended complaint is not accompanied by the requisite motion for leave to file an amended complaint, the proposed amended complaint will be stricken.  The court further notes that the proposed amended complaint does nothing to cure any of the deficiencies noted herein with respect to the claims in the original complaint.  Therefore, the court will reject the proposed amended complaint and not grant leave for Plaintiff to file an amended complaint because any amendment would be futile.

## IV.   Conclusion

For the reasons set forth above, Corrections Defendants' motion to dismiss will be granted in part and denied in part.  Corrections Defendants will be directed to answer the complaint.  Further, Defendant PA Mahute's motion to dismiss will be granted, and he will be dismissed as a party in this action.

25

An appropriate order will issue.

                                   s/Sylvia H. Rambo
                                   United States District Judge

Dated:  April 23, 2014.